UNION MORTGAGE INVESTMENT COMPANY *et al.* v.
FRED L. FOX, *Tax Commissioner, et al.*

(No. 7884)

Submitted May 16, 1934. Decided June 12, 1934.

*Koontz, Hurlbutt & Revercomb* and *W. Elliott Nefflen,* for plaintiffs in error.

*Homer A. Holt,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, and *R. H. Casto,* for defendants in error.

KENNA, JUDGE:

By enacting chapter 40 of the Acts of the Regular Session of 1933, the Legislature amended and re-enacted chapter 11 of the Code of 1931, in such manner as to omit the provisions of section 6, article 5, chapter 11, authorizing the deduction of indebtedness in listing money, credits and investments for tax purposes. This Act was passed March 11, 1933, to take effect from passage. By the enactment of chapter 38 of the Acts of the First Extraordinary Session of 1933, the Legislature amended section 12, article 3 of chapter 11, providing for certain corporate reports to be made to the assessors of the counties of the state, by deleting therefrom the provision requiring an itemized statement of debts in the event the taxpayer desired to take advantage of the provisions of section 6 of article 5 of chapter 11, covering deduction of indebtedness. This Act was passed May 25, 1933, to take effect from passage.

The Union Mortgage Investment Company, as of the first day of January, 1933, held money, credits and investments which were assessed at $2,191,190.00. As of the same date, its outstanding bonded indebtedness was $3,865,500.00. It contends that under section 6, article 5, chapter 11, it should pay no taxes on its money, credits and investments because its deductible indebtedness exceeds their valuation. Under appropriate statutory provision, it made this contention before the assessor, the state tax commissioner and the circuit court of Kanawha County, and in each instance the contention was overruled on the theory that the basis of tax values for the year 1933 is to be arrived at under the provisions of chapter 40 of the Acts of the Regular Session of 1933, which makes no provision for the deduction of indebtedness

from the value of money, credits, and investments returned for taxation. This writ of error and supersedeas is prosecuted to the judgment of the circuit court of Kanawha County.

Plaintiff in error advances the proposition that chapter 40 of the Regular Session of 1933 must be held to be prospective only in its operation, since there is no express provision making it retroactive, and since the generally accepted rule of construction requires that tax legislation as well as other statutory enactments must be interpreted as being prospective only, unless some necessary implication or express provision shows a clear intent to make it retrospective in its operation, and that as a necessary consequence of that proposition, section 6, article 5, chapter 11, not being repealed until after the beginning of the assessment year, is, in its original form, the section governing its taxable values for the year 1933.

The argument against the retrospective effect of the legislation, plaintiff in error urges, is further fortified by the fact that the title to neither act provides retroactive effect.

To the propositions advanced by the plaintiff in error, the attorney general replies that the tax amendment, adopted November 8, 1932, worked a sweeping change in the entire tax structure of the state and had the effect of wiping out the statute providing the method of arriving at the tax base, and of requiring new statutes to be adopted for that purpose; that it is not necessary to give chapter 40 of the Acts of 1933 retroactive effect because although the taxes are to be assessed as of January 1st, yet the return of property by the taxpayer need not be made until May 1st, and the assessor is not required to complete his books under Code, 11-3-19, until July 5th, and that even after that there is a further period of 25 days for the board of review to finish its labors under Code, 11-3-24; that the legislative intent to make the provisions of chapter 40 of the Acts of 1933 apply to the assessments for the year 1933 is so plain and impelling as to require a retroactive effect of the statute if this

is necessary to effectuate that purpose. On the proposition advanced as to the title of chapter 40 of the Acts of 1933, the attorney general says that the title is broad enough inasmuch as the act is amendatory of existing law, and that, in describing the subject matter, it is only necessary to name the act that is being amended, which is adequately done in the particular act.

As to chapter 38 of the Acts of the First Extraordinary Session of 1933, which is amendatory of section 12 of article 3 of chapter 11 of the Code 1931, it will be seen by an inspection of the section last referred to that it does not govern the *right* to claim the deduction of indebtedness from money, credits or investments returned for taxation. That *right* is governed by section 6 of article 5 of chapter 11, with which chapter 38 of the First Extraordinary Session of 1933 has nothing to do. The latter act simply governs the *method* by which that right may be exercised in setting up the tax returns of corporations. The right to claim the deduction had already been dealt with by chapter 40 of the Acts of the Regular Session of 1933, effective March 11, 1933, when chapter 38 of the First Extraordinary Session of 1933 went into effect on May 25, 1933. So that, in considering the question of the right to claim the deduction of indebtedness, we are not concerned with chapter 38 of the First Extraordinary Session of 1933, but only with chapter 40 of the Acts of the Regular Session of 1933.

The Act with which we are concerned went into effect from passage on March 11, 1933. It omitted the provision authorizing the deduction of indebtedness from moneys, credits and investments returned for tax purposes. In our opinion, it could do so effectively for the tax year 1933 without operating retrospectively. The assessment of property for taxation under our statutes is not an act that takes place on January 1st. It is a series of acts *related by law to* January 1st. Section 2, article 3, chapter 11, Code, is the statute that directs the assessment of property and prescribes the method of doing it. It provides for a listing by the taxpayer of property both real and personal. It prescribes that this list may not be

required of the taxpayer before the 10th day of January of the current year. In its beginning sentence, it states explicitly "on the first day of January, in each year, the assessors and their deputies shall begin the work of assessment in their respective counties, * * *." Section 12 of article 3 of chapter 11 provides that corporate returns may be made between the first day of the assessment year and the first day of May. This provision is carried into the amendatory chapter 38 of the First Extraordinary Session of 1933. Another section provides that the books of the assessor shall be turned over to the Board of Equalization and Review not later than July 5th, on which day the assessor is required to have completed his assessments. Code, 11-3-19. There are many other statutory provisions very clearly indicating that the assessment of property, while it relates to and speaks as of January 1st, is in fact a series of acts occurring after that day, and not necessarily culminating before July 5th of the current year.

From the foregoing, it will be plainly seen that since corporate returns of property for taxation, including the indebtedness listed under the former statute to be deducted from corporate intangibles, were not required to be made to the assessor until on or before the first day of May of the tax year, the statute contemplated that the work of assessing corporate intangibles should not be done until those returns are in, on or after May 1st of the current year. We, therefore, are of the opinion that the Act of the Legislature effective March 11, 1933, applied to the right to claim this deduction, and did so in prospect and not in retrospect. The fact that corporate returns were made, listing indebtedness and claiming the deduction under Code, 11-5-6, before its amendment, does not alter the situation as to the *right* to the deduction. What confuses is that the retrospective operation of the matter relates the acts of the assessor, when performed, back to January the first of the current year.

The assessor's work in arriving at tax values is not final until the assessment books leave his hands. Until then, his work is subject to revision and correction at

his hands. Until then, the legislature may prescribe the method to be used in arriving at the values to be taxed. That, and nothing more, is what it has done in this case.

Having determined that the Act in question, in so far as it relates to the deduction of indebtedness, effectively repeals the provision of the previous statute authorizing the deduction and that the prospective effect of the repeal is to prevent the claiming of the deduction for the year 1933, it is unnecessary to decide whether or not the section in question is retrospective in its operation. It is very strongly urged that since the tax amendment made a sweeping and fundamental change in the entire tax structure of the state, and that since the tax amendment itself must be held to have worked a repeal of all legislative provisions in conflict with its express terms or its manifest purpose, the legislative intent to make the new enactments retroactive, is necessarily implied. This argument is fortified by the fact that chapter 40 of the Acts of the Regular Session of 1933 was made effective from its passage, indicating a clear intent that its provisions should not await becoming effective until the tax year 1934. It is urged, in effect, that the legislature, in passing the new tax enactments has virtually placed a legislative construction upon the effect of the tax amendment itself in repealing existing tax statutes. These arguments, although weighted with plausibility, need not be considered, inasmuch as we are of opinion that the statute, limited to prospective operation, applies to the assessments for the year 1933.

We are further of opinion that the position of the attorney general concerning the title to the Act is sound and that the title is sufficient.

The judgment of the circuit court of Kanawha County is therefore affirmed.

*Affirmed.*